J.S20041/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAVONN ERIC CLANCY, | : | |
| | : | |
| Appellant | : | No. 1594 WDA 2013 |

Appeal from the Judgment of Sentence May 29, 2013
In the Court of Common Pleas of Beaver County
Criminal Division No(s).: CP-04-CR-0001902-2012

BEFORE: GANTMAN, P.J., DONOHUE, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED AUGUST 29, 2014**

Appellant, Javonn Eric Clancy, appeals from the judgment of sentence entered in the Beaver County Court of Common Pleas following his conviction for first degree murder[1] and firearms not to be carried without a license.[2] Appellant challenges the weight and sufficiency of the evidence to sustain his convictions. We affirm.

The trial court summarized the facts of this case as follows:

> Evidence and testimony presented during trial revealed that, shortly before noon on July 30, 2012, [Appellant] and

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(a).

[2] 18 Pa.C.S. § 6106(a)(1).

Dyquane Norman as well as several other witnesses to this incident were present at the Linmar Terrace community center . . . . Upon leaving the community center, [Appellant], Norman, and several other individuals walked to the 300 block of Linmar Terrace to relax. Approximately 15 to 20 minutes later, [Marquay Lavar] Riggins [("Decedent")] arrived at Linmar Terrance . . . . [Decedent] approached Norman with the intention of discussing and settling a dispute involving an alleged robbery of [Decedent's] cousin by Norman's and [Appellant's] friend, Damontae Williams.

While they were resolving their dispute, [Appellant] approached [Decedent] and Norman, cut between them, and began to insult [Decedent. Decedent] responded to [Appellant's] insults by approaching him and asking him what the problem was. At that point, [Appellant] punched [Decedent], and [Decedent] knocked [Appellant] to the ground and began hitting him. After grappling with [Appellant] on the ground for several seconds, [Decedent] was pulled off of [Appellant] by Norman, Devay Owens, and Tyquale Owens. Once [Appellant] and [Decedent] were separated, [Appellant] pulled a gun from his clothing and fired multiple shots at [Decedent. Decedent] attempted to run from [Appellant] but was shot three times in the back. [Decedent] collapsed in the street nearby, and [Appellant] fled the scene. After fleeing Linmar Terrace, [Appellant] was seen running into a nearby wooded area and in downtown Aliquippa. Once [Decedent] collapsed, Norman and Devay Owens called 911, and the fire department and medic rescue arrived to render assistance to [Decedent]. Ultimately, however, [Decedent] died as a result of the gunshot wounds.

On that same date of July 30, 2012, Detective Sergeant Steve Roberts of the Aliquippa Police Department issued a "be on the lookout" alert for [Appellant] and obtained a warrant for his arrest. Despite attempts to secure [Appellant's] arrest, [Appellant] continued to avoid apprehension until September 4, 2012, when [he] turned himself in to authorities. . . .

Trial Ct. Op., 8/28/13, at 4-5 (citations to record omitted).

At trial, Dr. James Smith was qualified as an expert in forensic pathology. N.T., 4/11/13, at 58. He performed an autopsy on Decedent which involved an external and internal examination. *Id.* at 59. The external examination revealed three gunshot wounds. *Id.* Dr. Smith testified, *inter alia*, as follows regarding the cause of death:

> A: In this particular case the fatal wound went into the back, very close to the spinal column. It passed through the large muscles of the back and entered the left chest cavity, just, just barely over to the left of the midline.
>
> It actually missed the left lung, but it went through the aorta, and the aorta is the primary vessel that, through which blood leaves the heart and goes to the rest of the body. It's as far as the blood vessels aside from the heart goes, it's the most important blood vessel from that standpoint.
>
> Then the bullet passed through the heart, primarily the right side of the heart, the right ventricle, and then it exited the, exited the body just to the left of the sternum or the breastbone . . . .
>
> \* \* \*
>
> Q: And what was in your opinion the cause of death?
>
> A: This was blood loss primarily from the bullet going through the aorta.

*Id.* at 61-62.

Following a jury trial, Appellant was convicted of first degree murder and carrying a firearm without a license. He was sentenced to an aggregate

term of life imprisonment. Post-sentence motions were filed[3] and denied.

This timely appeal followed. Appellant filed a Pa.R.A.P. 1925(b) statement

of errors complained of on appeal contemporaneously with his notice of

appeal and the trial court filed a responsive opinion.

Appellant raises the following issues on appeal:

> I. Whether the Commonwealth failed to present
> sufficient evidence to prove beyond a reasonable doubt
> that Appellant . . . possessed the malice required to
> support a conviction for First-Degree Murder?

> II. Was the jury verdict of guilty against the weight of
> the evidence presented at trial?

Appellant's Brief at 4.

First, Appellant argues the evidence was insufficient to convict him of

first degree murder because the record "establishes that [he] was acting

under a sudden passion brought about by [Decedent's] conduct, namely the

beating Appellant received from the [Decedent]." *Id.* at 15-16. Appellant

contends "there was no cooling off period, as the shooting happened

moments after the fight . . ." *Id.* at 16. He concedes that he killed

Decedent, but avers that the Commonwealth did not establish the requisite

---

[3] Appellant's judgment of sentence was entered on May 29, 2013. The deadline to file a post-sentence motion, the tenth day thereafter, was Saturday, June 8, 2013. *See* Pa.R.Crim.P. 720(A)(1). He filed his post-sentence motion on Monday, June 10, 2013 and it was therefore timely. *See* 1 Pa.C.S. § 1908 (providing that when last day of any period of time referred to in any statute falls on Saturday, Sunday, or legal holiday, such day shall be omitted from computation).

elements of first degree murder because he "lacked the malice required for such a finding, as his actions were the result of a sudden and intense passion brought about by the provocation of [Decedent]." *Id.*

"A claim challenging the sufficiency of the evidence is a question of law." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000).

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . does not require a court to ask itself whether **it** believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, it must determine simply whether the evidence believed by the fact-finder was sufficient to support the verdict. . . .
>
> \* \* \*
>
> When reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offense beyond a reasonable doubt. . . .

***Commonwealth v. Ratsamy***, 934 A.2d 1233, 1235-36, 1237 (Pa. 2007) (citations and quotation marks omitted).

Section 2502(a) of the Crimes Code defines first degree murder:

> **(a) Murder of the first degree.**—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

18 Pa.C.S. § 2502(a).

Our Pennsylvania Supreme Court has stated:

> To establish the offense of first-degree murder, the Commonwealth must prove the fact of the killing, the defendant's involvement, and malice and specific intent to

kill on the part of the defendant. Further, specific intent to kill can be inferred from the use of a deadly weapon upon a vital part of the victim's body. In this assessment, the evidence is viewed in the light most favorable to the Commonwealth, as the verdict winner.

*Commonwealth v. Moore*, 937 A.2d 1062, 1067 (Pa. 2007) (citations omitted). In *Moore*, the Supreme Court found the evidence was sufficient to support the first degree murder conviction. *Id.* The Court opined:

> **The manner in which the victim was killed (two gunshot wounds to his back, one of which penetrated his heart)** constitutes circumstantial evidence of malice and specific intent to kill on [the defendant's] part, and various aspects of subsequent conduct on [his] part, including his flight . . . evidence his consciousness of guilt.

*Id.* (emphasis added). Furthermore, "[t]he law does not require a lengthy period of premeditation; indeed, the design to kill can be formulated in a fraction of a second." *Commonwealth v. Jordan*, 65 A.3d 318, 323 (Pa. 2013), *cert. denied*, 134 S.Ct. 1275 (2014).

The trial court found "the evidence presented during trial was sufficient to enable the jury to find that all of the elements of first-degree murder, including the specific intent to kill, were established beyond a reasonable doubt." Trial Ct. Op. at 7. We agree. Appellant's claim that the Commonwealth failed to prove the requisite elements of first degree murder because he lacked the malice required for such a finding is of no merit. Instantly, Decedent's death was caused by Appellant's three gunshots to his back, one of which pierced his aorta; therefore, malice may be inferred.

***See Moore***, 937 A.2d at 1067. Appellant's claim that the shooting happened moments after the fight affords no relief, as an intent to kill may be "formulated in a fraction of a second." ***See Jordan***, 65 A.2d at 323. Appellant fled after the shooting, evidencing consciousness of guilt. ***See Moore***, 937 A.2d at 1067. We find no relief is due. ***See Ratsamy***, 934 A.2d at 1235-36; ***Widmer***, 744 A.2d at 751.

Next, Appellant claims that he is entitled to a new trial because the "the evidence in this case weighs heavily against the verdict reached by the jury, and as such shocks one's sense of justice." Appellant's Brief at 17.[4] Appellant only claims the verdict for first degree murder was against the weight of the evidence in the argument section of his brief. ***See*** Appellant's Brief at 16-17. He raises virtually the same argument as he does for the sufficiency of the evidence:

> The record reflects that at the time of the killing, . . . Appellant experienced substantial provocation by [Decedent], namely being severely beaten in front of his peers. Likewise, even after the fight had ultimately concluded, [Decedent] continued to berate . . . Appellant, even using a racial slur. Appellant himself admitted at trial that following this series of events he was overcome with an uncontrollable anger and ultimately lost control and began shooting. The weight of the evidence as to [Decedent's] provocation and . . . Appellant's anger caused by same weighs heavily against First-Degree Murder.

---

[4] Appellant preserved this issue in his post-sentence motion. ***See*** Mot. for Post Sentence Relief, 6/11/13, at 2 (unpaginated).

> Moreover, as stated at trial, it is difficult to fathom that . . . Appellant would have planned the killing in advance. . . . .

*Id.* at 17.

Our Supreme Court has held that

> [a] motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

*Commonwealth v. Ramtahal*, 33 A.3d 602, 609 (Pa. 2011) (citations omitted).

Instantly, the trial court opined that "the jury clearly resolved issues of credibility in favor of the Commonwealth's witnesses instead of [Appellant], whose account of the shooting greatly differed from the accounts of the other witnesses who testified during trial." Trial Ct. Op. at 12. The trial court found no merit to Appellant's claim that the verdict was against the weight of the evidence. *Id.* at 13.

Appellant asks this Court to reweigh the evidence and find the evidence that inculpated him was not credible. This we cannot do. ***See Ramtahal***, 33 A.3d at 609. Instantly, the jury's verdict was "not so contrary to the evidence as to shock one's sense of justice." ***See id.*** We discern no abuse of discretion by the trial court. ***See id.***

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/2014